### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID DAOUD WRIGHT, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | No. 21-10137-PBS |
| | ) | |
| JANE DOE, ANTONE MONIZ, MELVIN | ) | |
| SPRAGUE, | | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

January 13, 2022

SARIS, D.J.

David Daoud Wright initiated this civil rights action alleging that several officials at the Plymouth County Correctional Facility infringed his due process rights by placing him on suicide watch on June 4, 2015, and then in administrative segregation for the next thirty-two months.

Currently before the Court are defendants' motion to dismiss (Dkt. 28) plaintiff's amended complaint (Dkt. 27) pursuant to Fed. R. Civ. P. 12(b)(6) and plaintiff's opposition (Dkt. 31). For the following reasons, the Court DENIES the motion to dismiss.

### STANDARD OF REVIEW

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the well-pleaded factual allegations in the complaint as true and construes

reasonable inferences in the plaintiff's favor.  Breiding v.
Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019). "To
withstand a Rule 12(b)(6) motion, a complaint must contain
sufficient factual matter to state a claim to relief that is
plausible on its face." Rios-Campbell v. U.S. Dep't of
Commerce, 927 F.3d 21, 24 (1st Cir. 2019) (internal quotation
marks omitted).  The plausibility standard requires sufficient
factual allegations "to remove the possibility of relief from
the realm of mere conjecture." Dumont v. Reily Foods Co., 934
F.3d 35, 44 (1st Cir. 2019) (internal quotation marks omitted).
The purpose of the plausibility standard is to "weed out cases
that do not warrant either discovery or trial." Rios-Campbell,
927 F.3d at 24 (internal quotation marks omitted).

## PROCEDURAL BACKGROUND

This pro se complaint was filed on January 26, 2021.  On
March 23, 2021, Superintendent Moniz and Assistant
Superintendent Sprague (the "defendants") filed a motion to
dismiss plaintiff's original complaint.  On July 15, 2021, the
Court allowed defendants' motion and permitted plaintiff to file
an amended complaint containing additional factual allegations
in support of his claims.  The Court found that plaintiff's
claim (Count I) concerning his initial placement on suicide
watch in a filthy cell was untimely pursuant to the 3-year
statute of limitations.  As to plaintiff's claim (Count II)

concerning his continued confinement in administrative segregation, the Court found that the claim failed due to insufficient pleading and granted plaintiff thirty days to file an amended complaint.  On August 2, 2021, plaintiff filed his amended complaint (Dkt. 27).  Plaintiff brings his amended complaint pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his due process rights.  Id. at p. 1 (introduction). Plaintiff contends that the direct actions of Moniz and Sprague perpetuated and continued his restrictive conditions of confinement for thirty-two (32) months.  Id. at ¶ I(b)(iii).  Plaintiff maintains that the Court can find that "the defendants made the final decisions at every stage related to his housing and they routinely dismissed and denied his request to be removed from administrative segregation and refused to provide him an opportunity to be removed from those conditions."  Id. at p.6 (conclusion).

**FACTUAL BACKGROUND**

The factual allegations in the amended complaint are taken as true for purposes of the Motion.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (stating that on a motion to dismiss, all well-pled facts in the complaint are assumed to be true).  Because plaintiff is proceeding pro se, the Court construes the allegations in the amended complaint liberally, see Rodi v. New Eng. Sch. Of Law, 389 F.3d 5, 13 (1st

3

Cir. 2004), and draws all reasonable inferences in favor of plaintiff.  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

While in pretrial detention on terrorism charges[1], plaintiff was placed in administrative segregation ("ADSEG") on June 4, 2015.  At that time, defendant Moniz formally introduced himself to plaintiff. Am. Compl. at ¶ I.  Plaintiff inquired into the reason for his placement in administrative segregation ("ADSEG") and whether he would be placed into General Population.  Id. Moniz responded that "I put you in here" and "Look!, you're staying here now and so don't worry about population."  Id. at ¶ I(a).

No later than the following month, July 2015, during an "Administrative Walkthrough," defendant Sprague formally introduced himself as the Assistant Superintendent.  Id. at ¶ I(b).  During this introduction, plaintiff asked Sprague why "he still had not been advised as to the reasons for his placement

---

[1] Wright was indicted in June 2015 for (1) conspiracy to provide material support to ISIS, in violation of 18 U.S.C. §§ 2339B(a)(1)-(2); (2) conspiracy to obstruct justice, in violation of 18 U.S.C. § 371; and (3) obstruction of justice, in violation of 18 U.S.C. §§ 2, 1519. United States v. Wright, C.R. No. 15-cr-10153, ECF No. 13.  An April 2016 superseding indictment added a fourth charge for conspiracy to commit acts of terrorism transcending national boundaries, in violation of 18 U.S.C. §§ 2332b(a)(2) and (c).  Id., ECF No. 60.  A February 2017 second superseding indictment added a fifth charge of obstruction of justice, in violation of 18 U.S.C. § 1519.  Id., ECF No. 171.

in ADSEG." Id. at ¶ I(b)(i).  Sprague informed plaintiff that "the Superintendent and I are the ones who put you down here." Id.  When plaintiff advised Sprague that the Superintendent made a similar statement but failed to state the reasons why he was placed in ADSEG, Sprague stated "Mr. Wright, for now, this is where you're staying and if you have any other questions you can ask the Superintendent but we think it best that you remain here in G [ADSEG]." Id.

At the time of his original placement in ADSEG, on June 4, 2015, the defendants ordered "corrections staff to sit outside the cell door of Mr. Wright (GSE 107) to surveil him and take observation notes for about three (3) weeks time." Id. at ¶ I(c)(i).  Due to the stress of the surveillance, plaintiff sought to have the officers removed.  Id.  Only after involvement by plaintiff's criminal defense attorney did the defendants remove such surveillance.  Id.

On or around August 2015, the ADSEG department head, Captain John Hickey, advised plaintiff that the U.S. Marshals stated that plaintiff was to "be treated like everyone else" and that Hickey "went to bat for [plaintiff] to get [him] out from SEG to pop." Id. at ¶ I(a)(i).  Hickey explained to plaintiff that plaintiff "belong[s] in population" because plaintiff is "not a problem inmate, [has no] charges against women or children and that [plaintiff is] big enough to take care of

[himself]." Hickey indicated that defendants Moniz and Sprague said "no" to placing plaintiff in population and that they indicated that they "were going to keep [plaintiff in ADSEG]." Id.  When plaintiff questioned Hickey further, Hickey informed plaintiff that "they didn't really explain why that was, only that it was their call and they thought it best to keep an eye on you."  Id.

During an "Administrative Walkthrough" on or about October 2015, Sprague stood in front of plaintiff's cell and asked "how's it going Mr. Wright?"  Id. at ¶ I(b)(ii).  Plaintiff responded that "he was still trying to figure out what was going on and when he would be removed from his cell (GSE 107) and sent to general population."  Id.  Before walking away, Sprague informed plaintiff that "the Superintendent and I have talked about this and for now, you're staying here in ADSEG.  Now as for the camera, eh, we're going to keep an eye on you alright?! But eh, we'll let you know.!"  Id.

In early/mid 2016, over several months, plaintiff made oral requests to be removed from ADSEG directly to Moniz and Sprague during "Administrative Walkthroughs."  Id. at ¶ I(a)(ii).  On an unspecified day in 2016 while plaintiff was in his cell (GSE 107), Moniz, after having plaintiff handcuffed, entered plaintiff's cell and ordered plaintiff "to take a seat."  Id.  Plaintiff inquired about "being moved out of the camera cell and

placed into general population." Id. Plaintiff referenced his Islamic faith and proclaimed to Moniz "that if not population than at least his privacy could be respected and he could be placed in a non-camera cell." Id. Moniz "crossed his arms, released a huffing sound and began to shake his head in the negative stating 'I'm sorry I just can't do that.'" Id. When plaintiff sought clarification about the surveillance while he used the washroom/restroom, Moniz replied "Nope I can't let you do anything with the camera." Id. When plaintiff "desperately inquired as to why he could not be removed from ADSEG," Moniz responded "I just think that this is a better place for you." Id. Before plaintiff could respond, Moniz "briefly raised his hand and said 'I. AM. NOT. TAKING. YOU. OUT. OF. SEG. So unless there is anything else, that's my decision, ALRIGHT?!." Id. Moniz then exited plaintiff's cell and withdrew from the housing unit." Id.

In late 2015 or early 2016, plaintiff unsuccessfully sought to be placed in general population in order "to have longer access to review discovery (among other things). Id. at ¶ I(c)(iii). After intervention by plaintiff's criminal defense attorney, Moniz suggested that "he would permit Mr. Wright to view discovery from 10pm until 3am while chained and handcuffed to a wall (eventually just handcuffed) and then stripped

searched everytime (sic) afterward before returning him to his
cell." Id.

On or about June 2016, plaintiff's mother had concern for
plaintiff's "overall wellbeing including his spirituality and
she expressed Mr. Wright's need to be in general population to
attend religious services and obtain spiritual counsel from an
Imaam." Id. at ¶ I(c)(ii). Plaintiff's criminal defense
attorney contacted defendant Moniz, who refused to move
plaintiff from ADSEG. Id. Moniz permitted a weekly, 15-20
minute visit by an Imaam "through the food slot in the unit
door." After plaintiff's complaints, plaintiff was permitted to
meet with the Imaam in the visitation room after which he was
subjected "to a strip search before being returned to his cell."
Id. Plaintiff complains that these conditions "degraded" him
and forced plaintiff "to end all religious visitations with the
Imaam after but a few visits with him." Id.

In September 2016, while the lighting fixtures were being
replaced in plaintiff's ADSEG housing unit, he was placed in
Cell #109, which was a double-bunked cell that contained "an
infrared/night vision surveillance camera." Id. at ¶ I(a)(iii).
Plaintiff alleges that he was in this cell for "about two weeks,
on house/rec alone status." Id. After expressing to Hickey,
the ADSEG captain, plaintiff's concern about his "placement
again into an ADSEG/Camera cell," Hickey advised plaintiff that

he doesn't "really have say over what these guys do [and that before any decision is made concerning plaintiff], we have to clear it with [Moniz and Sprague]." Id. Hickey advised plaintiff that Moniz and Sprague "want you in that camera cell and won't let [Hickey] take you out of it, [Hickey's] hands are tied you know that." Id. Plaintiff expressed his discontent to Hickey. Id.

Two months later, on or around November 1, 2016, the defendants "initiated a telephonic conference with other PCCF personnel (e.g., IPS [Inner Perimeter Security] Assistant Deputy Superintendent(s) etc) for approximately forty-five (45) minutes discussing Mr. Wright's removal from 'Protective Custody' to be placed in the general population side (e.g. 'Northwest') of ADSEG in cell #10 which was a single bunk camera cell and he was to remain on house/rec alone status under this new housing assignment." Id. at ¶ I(a)(iv). After the telephonic conference, Hickey informed plaintiff that "he could not refuse this housing assignment" Id. Hickey further stated that "this is absolutely ridiculous from my perspective but they won't let you refuse [and the defendants] said you have to move and that if you refused the move you would get a disciplinary ticket for 'refusing housing' and would be placed on Disciplinary status and sent to the ICE Unit: ['ICE' earned the nickname due to its firgid (sic) temperature and conditions]." Id. Plaintiff

alleges that he "was overwhelmed with anxiety and disbelief and in a flood of confusion stated that he needed to remain in Protective Custody because of his 'High-Profile' case, to prevent receiving a disciplinary ticket and its subsequent penalties."   Id.

Less than six months later, on or about April 21, 2017, plaintiff, "having reached his wits end with his continued housing denial by the defendants," filed a grievance directly to the defendants.   Id. at ¶ I(a)(v).  Plaintiff's grievance explained "the violation of his rights" and included a request "to be sent to general population."   Id.  Plaintiff's grievance "was intercepted, circumvented and subsequently denied."   Id. "Frustrated by this continued response," plaintiff "brought it to the attention of Captain Hickey, to which he responded," among other things: "those guys aren't going to take you out of ADSEG."   Id.  Upon further inquiry, Hickey stated to plaintiff that "I know that this is going to be a big lawsuit going forward, I know that and I've tried everything to help you and you know that I went to bat for you twice before.  When I'm called in to testify or give a deposition, I'm going to speak the truth and that's it!"   Id.

On or about December 19, 2017, upon plaintiff's return from court, he was placed on overnight "Suicide Watch."   Id. at ¶ I(b)(iii).  Bethany, a mental health worker, evaluated plaintiff

and "determined that he was 'okay' due to his religious
observance and stated that she would 'call upstairs' [location
of the defendants offices] and 'let them know.'"  Id.  When
plaintiff asked who authorized his placement on suicide watch,
Bethany advised plaintiff that "Sprague authorized it, but [she]
will call and let him know that [plaintiff is] perfectly fine
and okay to go back."  Id.  Sprague authorized plaintiff's
removal "from 'Suicide Watch' and [placement] back into ADSEG."
Id.

## DISCUSSION

The defendants argue that the amended complaint should be
dismissed because it fails state a due process claim and is
time-barred by the applicable three-year statute of limitations.
They also assert failure to exhaust administrative remedies.

### I.   Due Process

In Bell v. Wolfish, 441 U.S. 520, 535-36 (1979), the
Supreme Court established the principle that "under the Due
Process Clause, a detainee may not be punished prior to an
adjudication of guilt in accordance with due process of law."
Whether detention constitutes impermissible punishment or
permissible regulation "depends on whether [it is] rationally
related to a legitimate nonpunitive governmental purpose and
whether [it] appear[s] excessive in relation to that purpose."
Id. at 561.  "[T]he test of whether a condition is in fact

11

punishment is whether 'the disability is imposed for the purpose of punishment.'"   Ford v. Bender, 768 F.3d 15, 24 (1st Cir. 2014) quoting Bell, 441 U.S. at 538.

The defendants contend that the allegations do not plead a violation of the criteria set forth in Bell because plaintiff does not allege that his placement in ADSEG was punitive. Plaintiff alleges that the defendants denied him due process when they caused him to be continuously detained in the ADSEG without a legitimate purpose.  He was subject to constant surveillance, lack of access to religious services, strip searches after meeting with his Imaam in a visitation room, strip searches after reviewing legal material and designation of "house/rec alone status."  He alleges that but for the defendants' particular instructions, he would have been housed in the general population.  He contends that there were no disciplinary or administrative justifications for his long-term segregation from the general population and it was overly restrictive.

The Court finds that plaintiff plausibly suggests that the defendants imposed restrictive conditions of confinement that were excessive in relation to any legitimate nonpunitive governmental purpose.[2]

---

[2] To the extent the defendants move to dismiss on the ground that the amended complaint fails to comply with Rule 8(a) of the

## II.  Statute of Limitations

Alternatively, the defendants argue that his claims are time-barred.  Plaintiff's claims are subject to a three-year statute of limitations.  Nieves v. McSweeney, 241 F.3d 46, 52-53 (1st Cir. 2001).  An affirmative defense, such as the statute of limitations, should only lead to dismissal under a 12(b)(6) standard if "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'"  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (internal quotation marks and citations omitted).

The amended complaint is silent as to an exact date when the alleged aggrieved condition of confinement was terminated. The defendants point out that the latest date mentioned in the amended complaint concerns plaintiff's removal from ADSEG and placement on suicide watch on or about December 19, 2017, a date outside the statute of limitations.  Judgment entered in the criminal case on December 20, 2017.  See United States v. Wright, C.R. No. 15-cr-10153, ECF No. 410.

However, plaintiff does allege that his detention in administrative segregation lasted 32 months.  Since the administrative segregation started on June 4, 2015, it continued

Federal Rules of Civil Procedure, the Court finds that the amended complaint satisfies the requirements of Rule 8(a) because it gives defendants notice of the claims.

at least until February 4, 2018.  Because this case was filed on January 26, 2018, it is not time barred.

### III. Exhaustion

As to the defendants' contention that plaintiff failed to meet his burden to establish exhaustion of his administrative remedies, the Court previously held that plaintiff made sufficient allegations that he did exhaust and made a plausible claim that any further exhaustion was futile.  Mem. p 7, n. 3. Here, the Court again concludes that the defendants are not entitled to dismissal on exhaustion grounds.

### ORDER

It is hereby Ordered that Defendant's motion (Docket No. 28) to dismiss the amended complaint is DENIED.


SO ORDERED.

                         /s/ Patti B. Saris
                         PATTI B. SARIS
                         UNITED STATES DISTRICT JUDGE